IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOE QUIRK,

        Plaintiff,

   v.

SONY PICTURES ENTERTAINMENT INC., et al.,

        Defendants.
_____/

No. C 11-3773 RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Joe Quirk contends that a forthcoming Hollywood movie, "Premium Rush," is derived from his 1998 novel, "Ultimate Rush." While there is no dispute that Quirk has adequately pleaded copyright infringement claims, this motion to dismiss challenges whether Quirk may pursue an implied contract claim against those defendants who, he cannot allege, directly received a copy of his novel in the context of his efforts to obtain a movie "deal." Because Quirk has adequately alleged facts under which an implied contract plausibly could arise, the motion will be denied.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a

complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true).

### III. BACKGROUND[1]

Quirk wrote "The Ultimate Rush" between 1994 and 1997. He describes it as an "action-driven" novel, always intended for possible adaptation into a movie, "due to its highly-cinematic features." The novel was published in March of 1998 and released in paperback in October of 1998. By Quirk's own admission, the novel was extensively reviewed and commented on in the media, and has been widely available commercially, and readily accessible.

Prior to publication, Quirk retained an agent, Matthew Snyder of California Artists Agency ("CAA"), who widely distributed pre-release copies and synopses of the novel "among

---

[1] This description is taken from the allegations of the Third Amended Complaint, which are presumed true in a motion to dismiss. Although Quirk previously amended his complaint, this is the first motion to dismiss to be heard.

2

entertainment industry participants, including defendants and persons who were regularly and directly affiliated with defendants and involved in feature film development and production." Of the named defendants, however, only Columbia Pictures Industries, Inc. is alleged to have received a pre-release copy of the novel from Snyder and to have entertained a "pitch" of it as a possible feature film project. Columbia has answered the complaint, and is not a party to this motion to dismiss.

The remaining defendants are Sony Pictures Entertainment, Inc. (of which Columbia is a subsidiary); Pariah, a company involved in the production of the "Premium Rush" film; David Koepp, the director and co-writer of the Premium Rush screenplay; and John Kamps, the other co-writer of the screenplay ("the Moving Defendants"). In addition to the subsidiary-parent relationship between Columbia and Sony, Quirk has alleged in a fair amount of detail a number of "relationships" between the Moving Defendants and other individuals and entities in Hollywood. Quirk theorizes that a copy or copies of the novel, and/or the notion of making it into a film, passed through one or more routes between those to whom his agent *directly* submitted the novel and the Moving Defendants.[2]

Additionally, in the late 1990s, Warner Brothers obtained an option to make a film from the novel, and commissioned Jason Hefter to write a screenplay (the "Hefter Screenplay"). Quirk alleges that the Hefter Screenplay also was circulated within the industry, and that the Premium Rush script bears evidence of copying from the Hefter Screenplay, as well as from the underlying novel. The Warner Brothers option expired in 2002, and Quirk acknowledges that he owns no copyright in the Hefter Screenplay. Because that screenplay is a derivative work of the novel, however, Quirk contends that it cannot be used as the basis for a film absent his consent.

---

[2] Quirk's description of the interconnections in Hollywood and the role that personal relationships sometimes play there is not inherently implausible. Nevertheless, as discussed below, it will not be sufficient for Quirk to show merely that a copy of his novel passed from hand to hand through such Hollywood connections.

IV. DISCUSSION

The Ninth Circuit's opinion in *Montz v. Pilgrim Films & Television, Inc.,* 649 F.3d 975 (9th Cir. 2011), provides useful background as to the basic theory of an implied contract claim in like circumstances. As noted in *Montz*, "[i]n Hollywood, writers commonly submit copyrighted scripts to producers with the understanding that if the script is used, the producer must compensate the writer for the use of the copyrighted material." *Id.* at 976. The question is "what happens when the producer uses the idea or concept embodied in the script, but doesn't pay?" *Id.*

*Montz* explained that "The Supreme Court of California, in 1956, answered this question by recognizing an implied contractual right to compensation when a writer submits material to a producer with the understanding that the writer will be paid if the producer uses the concept." *Id.* (citing *Desny v. Wilder*, 46 Cal.2d 715, 299 P.2d 257 (1956)). *Montz* went on to note that "A so-called "*Desny* claim" has remained viable under California law for over fifty years" and has been applied by the Ninth Circuit in cases such as *Grosso v. Miramax Film Corp*., 383 F.3d 965 (9th Cir. 2004), amended 400 F.3d 658 (9th Cir. 2005), and *Benay v. Warner Bros. Entm't, Inc*., 607 F.3d 620 (9th Cir. 2010). *Montz*, 649 F.3d at 976-977. The *Montz* court described the essence of the claim as resting on "an expectation *on both sides* that use of the idea requires compensation." *Id.* at 976. Such a "bilateral understanding of payment" is critical, because it "constitutes an additional element that transforms a claim from one asserting a right exclusively protected by federal copyright law, to a contractual claim that is not preempted by copyright law." *Id.*[3]

Here, the Moving Defendants contend that Quirk has not stated, and cannot state, a *Desny* claim because he did not submit his novel to any of them in the first instance, much less under circumstances that would warrant finding a "bilateral expectation" of compensation. Moving Defendants are arguing, in essence, that unless a writer can show that he gave a work *directly* to an

---

[3] If Quirk can succeed in showing a copyright violation, any *Desny* claim would be superfluous. A viable implied contract claim, however, would potentially render defendants liable for use of basic ideas that are not protected under copyright, even if nothing in the movie constitutes misappropriation of expression.

4

individual defendant, or to an employee or agent of a corporate defendant with express authorization to bind the entity, there can never be a claim sounding in implied contract.

Quirk, in turn, argues for a rule that essentially would permit an implied contract claim whenever a plaintiff can "trace" a copy of a work allegedly used by a defendant, back to the recipient of plaintiff's initial movie proposal, notwithstanding the number of intervening hands that touched it. Neither Quirk nor Moving Defendants have pointed to controlling precedent expressly addressing this particular issue. Quirk is correct that the *Montz* decision permitted an implied contract claim to go forward against "defendants" generally even though it appeared, at least as the facts were described in the opinion, that the plaintiff had only "pitched" his idea to a subset of the defendants. *See* 649 F.3d at 978. The issue in *Montz*, however, was not *which* defendants might be liable, but whether a *Desny* claim was viable at all; as such, it does not compel a conclusion that Quirk may proceed here against these particular Moving Defendants. *See Webster v. Fall,* 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents"). Similarly, the issue of whether *all* defendants participating in making a movie from allegedly "stolen" ideas could be liable under an implied contract theory was neither discussed nor decided in *Grosso*.

In *Benay,* defendants argued for the first time on appeal that *Desny* claims could not go forward as against defendants with whom plaintiffs lacked privity of contract. Although the court observed that "[p]rivity between the parties is a necessary element of an implied-in-fact contract claim," because plaintiffs "did not have an opportunity to organize and present evidence in the district court," the court expressly declined to decide whether any of the defendants might be entitled to dismissal for lack of privity. 607 F.3d at 634.

One district court decision has expressly confronted an argument similar to that made by the Moving Defendants here. In *Goldberg v. Cameron*, 482 F. Supp.2d 1136 (N.D. Cal. 2007), the plaintiff had submitted a movie script and "promotional package" to New World Pictures. He thereafter filed suit against two individuals who allegedly had been employed by New World Pictures at the time, regarding films they later were involved with producing elsewhere. The

*Goldberg* court found that even though there was 'by no means a compelling allegation that the work was disclosed to the defendants in a manner that would create an implied contract," the averments of the complaint were minimally sufficient. 482 F. Supp.2d at 1150.

Here, to the extent Quirk is suggesting that all he need do is "trace" a particular copy of his novel found in defendants' possession back to one that was submitted in a context that might support an implied contract, he is stretching the *Desny* theory beyond its breaking point. As stated in *Montz*, there must have been a "bilateral understanding of payment," and Quirk ultimately will have to prove not only that a copy of the novel originally provided by his agent ended up in the Moving Defendants' hands, but also that each person who accepted it along the way did so with the expectation that payment would be due if the ideas were utilized. Conversely, however, the Moving Defendants press too far the notion that they are necessarily insulated from any implied contract claim simply because they are not the precise entities and individuals to whom Quirk claims his novel was submitted. There are circumstances under which the expectation of payment may survive the transfer of a book from one person or entity to another.

Whether Quirk has adequately pleaded facts to support an inference that his novel was transferred with such an expectation is a close call. To be sure, his allegations are to a significant degree both conclusory and speculative, and he forthrightly concedes that additional facts must be developed through discovery. Nevertheless, particularly in light of the questions discussed below regarding the Hefter screenplay, dismissal prior to the development of a more complete factual record would be inappropriate.

As to the Hefter screenplay, Quirk's allegations more strongly support an inference that any person or entity receiving a copy of it would have done so with an expectation that any use of it would require compensation. Additionally, Quirk has alleged sufficient facts to warrant a presumption, at the pleading stage, that the Moving Defendants utilized the Hefter Screenplay in developing "Premium Rush." Quirk, of course, does not hold the copyright in the Hefter Screenplay. To the extent it contains protectable elements of expression not found in the novel, he would lack standing to pursue copyright claims for any infringement by defendants of those particular elements. Similarly, to the extent defendants may have used *ideas* found in the Hefter

6

Screenplay, but not in the novel, Quirk's inability to pursue a *Desny* claim with respect to such ideas is self-evident.

The Moving Defendants have not met their burden, however, to establish through citation to authority or otherwise, that as a legal matter, the author of an underlying work loses his or her right to pursue a *Desny* claim where the ideas embodied in an underlying work happen to be transmitted to the defendants through the vehicle of a derivative work.[4] Accordingly, while it is far from clear that Quirk ultimately will be able to prevail on a *Desny* claim based on any use by Moving Defendants of *either* the novel or the Hefter Screenplay, the motion to dismiss must be denied.

## V. CONCLUSION

The motion to dismiss is denied. Defendants shall file an answer to the complaint within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 7/5/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[4] This ruling does not preclude the Moving Defendants from raising this legal issue on summary judgment or at trial. Also remaining to be decided is the legal issue of whether Quirk's dissemination of his ideas to the public through the publication of the novel has any impact on his ability to pursue a *Desny* claim, regardless of whether Moving Defendants worked from a copy originally submitted by his agent, or from the Hefter Screenplay.